Argued and submitted November 19, 1982, reversed and
remanded with instructions June 15, reconsideration denied July 15,
petition for review denied September 7, 1983 (295 Or 618)

# WESTERN INTERNATIONAL FOREST PRODUCTS, INC.,
*Respondent,*

*v.*

# BOISE CASCADE CORPORATION,
*Appellant.*

## (A8002-01141; CA A23736)

665 P2d 1231

Richard S. Gleason, Portland, argued the cause for appellant. With him on the briefs was Stoel, Rives, Boley, Fraser and Wyse, Portland.

Rick T. Haselton, Portland, argued the cause for respondent. With him on the brief was Lindsay, Hart, Neil & Weigler, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

WARDEN, J.

Plaintiff, a wholesaler of forest products, sought damages for defects in and to revoke acceptance of particleboard that it had purchased from defendant, the manufacturer. Defendant appeals from the judgment for plaintiff, entered on a jury verdict, claiming that evidence of trade usage was erroneously admitted and that it was entitled to a directed verdict.

Over the course of several months in 1978, plaintiff purchased seven truckloads of .625 inch phenolic particleboard from defendant. It was purchased for re-sale to manufacturers of mobile homes. Some of the particleboard was sold, and the remainder was stored in a warehouse. In July, 1979, plaintiff noticed that metal bands around stacks of the particleboard had broken. Several sheets were measured, and it was discovered that the maximum thickness of sheets measured was .650 inch. Plaintiff wrote to defendant, claiming that the sheets exceeded the allowable thickness variation as expressed in defendant's technical bulletin describing the product and asking that defendant accept return of the goods. Defendant refused, and this litigation ensued.

Plaintiff's initial complaint alleged breaches of both express and implied warranties. The implied warranty alleged was that the sheets were "reasonably fit for the specific purpose of use as mobile home decking and of merchantable quality as such." The express warranty alleged was that the boards "will provide a uniform, smooth surface with a thickness variation not to exceed +/-.005 of an inch." This language in the complaint was quoted from a sales brochure of defendant that described the particleboard. The brochure was entitled "Premium Particleboard Mobile Home Decking Performance Guarantee." It guaranteed the limitation in the thickness variation when the particleboard was *installed* according to its directions.[1]

---

[1] Defendant's sales brochure read in relevant part:

"Boise Cascade Premium Particleboard Mobile Home Decking, when installed in compliance with the applications set forth on the reverse side of this guarantee and used under normal and customary conditions:

"1. Will provide a uniform, smooth surface with thickness variation not to exceed +-.005 of an inch.

Plaintiff filed an amended complaint, omitting any mention of an implied warranty. The allegation of the express warranty was amended to read

"Defendants sold the aforesaid mobile home decking under a warranty specifying the material, *when installed,* would provide a uniform, smooth surface with variations not to exceed .005 inch, and would not warp." (Emphasis supplied.)

Thus, the warranty alleged a *performance* warranty only. The amended complaint also alleged that while the particleboard was stored, edges of the material swelled to varying thicknesses, averaging between .644 and .650 inches, resulting in a surface thickness variation in excess of .005 inches, and that

"[t]he edge swelling substantially impaired the value of the material to plaintiff, in that plaintiff was unable to market the material because of the swelling, and because of the concerns the swelling caused plaintiff's customers about the material's ability not only to provide a smooth, uniform surface but also to have other warranted characteristics, in particular that it would not warp after installation."

Defendant's Technical Bulletin No. 301 specified as an average physical property a "thickness swell (24 hr immersion)" of .05 inches. Plaintiff did not allege that defendant gave any warranty as to swelling.[2]

Thus, plaintiff sought to revoke acceptance of delivered goods because of their nonconformity but failed to allege in what way the goods failed to conform to any representation of defendant. It alleged a performance warranty but did not allege a breach thereof and alleged that the goods swelled while in storage but did not allege that this breached any representation by defendant about swelling.[3]

---

"* * * * *

"6. Will not delaminate or warp."

[2] Plaintiff did rely on nonconformance to the manufacturing thickness tolerance listed in defendant's technical bulletin when it first wrote to defendant, requesting that defendant accept the return of the particleboard. It apparently abandoned that theory of nonconformity in its pleadings.

[3] Plaintiff did allege a sort of anticipatory breach of warranty, in that the swelling, although itself not a breach or nonconformance, caused sufficient uncertainty in the minds of plaintiff's potential buyers that the particleboard would perform as warranted when installed, that plaintiff was unable to market the boards. We agree that, if excessive swelling could be considered as the product's nonconformity, plaintiff might

Perhaps aware of the deficiency in its complaint, plaintiff propounded a new theory in its trial memorandum, which was served on defendant's counsel on the day of trial, that plaintiff was entitled to revoke acceptance of the goods because of defendant's breach of an *implied* warranty that had arisen out of trade usage.[4] The warranty from trade usage, as claimed by plaintiff, amounted to a guarantee, not of a manufacturing tolerance, but that the particleboard, while in storage, would not swell so that the thickness of the sheets *varied* more than .005 of an inch.[5] Defendant objected to the presentation of evidence of a warranty based on trade usage, because it was outside the scope of plaintiff's complaint and because plaintiff did not notify defendant that it intended to offer evidence of a trade usage, as required by ORS 71.2050(6).[6]

---

prove substantial impairment of the value of the goods to plaintiff as required under ORS 72.6080. *See infra,* n 8. However, because plaintiff did not allege any actual breach of defendant's performance guarantee that the thickness of the installed particleboard would not vary by more than .005 inch, plus or minus, or of defendant's technical specification for the product that the average thickness swell, on 24 hour immersion, was .05 inches, we do not see how apprehension in the minds of third parties could, by itself, be a "nonconformity" of goods.

[4] Plaintiff's trial brief stated:

"While Boise Cascade Corporation's representative did not state the warranty in so many words, he did indicate that the D-2 phenolic decking being purchased would meet all the standard qualifications in the trade for that class of decking."

Farther along in that brief, plaintiff asserted that defendant agreed to deliver "D-2 phenolic board made to the same specifications and covered by the same warranties as would apply to D-2 urea board" and referred to this warranty as a standard warranty defined by trade usages. At trial, counsel for plaintiff referred to "permitted tolerances under the standard industry warranty."

[5] Plaintiff's new theory was that, even though defendant's technical bulletin expressly permitted thickness swell of up to .05 of an inch, defendant impliedly warranted that the thickness *variation* would still not exceed .005 of an inch.

Defendant suggests a reason for the change in plaintiff's theory. The employe of plaintiff who negotiated the sale stated in an affidavit prior to trial that he relied upon the warranties contained in the sales brochure in making the purchase. The brochure included a disclaimer of all other express or implied warranties and a time limit and notice requirements for complaints under the performance guarantee. In its answer to plaintiff's amended complaint, defendant alleged affirmative defenses based on the limitations contained in the brochure. At trial, the employe testified that he had not seen the brochure at the time he ordered the particleboard.

[6] ORS 71.2050(6) provides:

"Evidence of a relevant usage of trade offered by one party is not admissible unless and until he has given the other party such notice as the court finds sufficient to prevent unfair surprise to the latter."

Defendant assigns as errors the admission of such evidence[7] and the denial of its motion for a directed verdict, made on the ground of plaintiff's failure to establish that the goods were nonconforming.[8]

■ We agree with defendant that evidence of an implied warranty on the basis of trade usage should have been excluded. Plaintiff's amended complaint gave no notice of intent to rely on such an implied warranty, and plaintiff made no attempt to amend to allege one. Plaintiff's statement in its brief that "[a]t no time did plaintiff allege reliance on a written warranty" is patently disingenuous. The amended complaint alleged a warranty that "specified" certain qualities. Although the amended complaint omitted the quotation marks of the initial complaint, it reiterated the language of the sales brochure. Furthermore, both the brochure and the complaint clearly expressed only a warranty that the particleboard would behave in a certain way after it was installed. The implied warranty that plaintiff relied on at trial was that the material would not swell while in storage. Plaintiff alleged no such warranty and proved no breach of the warranty that it did plead.

■■ We also reject plaintiff's argument, accepted by the trial court, that certain deposition testimony of defendant's regional sales manager concerning general trade warranties, eight months before trial, provided adequate notice of a warranty based on trade usage, even if the complaint did not. As counsel for defendant pointed out at trial, irrelevant areas are often explored in depositions under the standard stipulation waiving relevancy objections. Also, the deposition testimony was not specific about what constituted the warranty based on trade usage, referring merely to a "minimum industry standard warranty." Assuming that the deposition testimony reduced the degree of defendant's surprise in being faced with a case based on an implied warranty from trade usage, it was not adequate as notice under ORS 71.2050(6). Without notice

---

[7] Defendant, after receiving plaintiff's trial memorandum, had asked the court to exclude evidence of trade usage. The motion was denied. Defendant assigns that ruling as error also.

[8] Revocation of acceptance of goods is controlled by ORS 72.6080(1):

"The buyer may revoke his acceptance of a lot or commercial unit *whose nonconformity* substantially impairs its value to him * * *." (Emphasis supplied.)

of plaintiff's theory of a warranty based on trade usage, defendant had no reason to prepare a defense to that claim. Notice of the new theory on the morning of the trial gave defendant no opportunity to investigate possible defenses.[9]

■    It follows that defendant should have been granted a directed verdict for failure of proof on nonconformity. Because no breach of a warranty based on trade usage was pleaded, evidence of such a warranty should have been excluded, and plaintiff could rely only upon the warranty actually pleaded. That warranty was only for certain performance *after* installation as mobile home decking. Plaintiff failed to prove that the material sold failed to conform to what was represented in any respect pleaded. A party must recover, if at all, on the allegations of the complaint and not on a new or different issue. *Snyder v. Pynn,* 50 Or App 449, 454, 623 P2d 1090 (1981).

Reversed and remanded with instructions to enter judgment for defendant.[10]

---

[9] Given the "surprise" tactics of plaintiff's counsel, we also do not take as sufficient to place defendant on notice of intent to rely on a trade usage warranty plaintiff's counsel's comment to defendant's counsel, a week before trial, and disputed by defendant's counsel, that plaintiff intended to call defendant's regional sales manager to testify as to a "usage of trade." Plaintiff's counsel's affidavit that this communication was made shows that plaintiff at that time still intended to rely on an "express" warranty. The amendment to the complaint did nothing to advise defendant that plaintiff intended to rely on anything other than a written warranty. Even in its brief on appeal, plaintiff continues to insist that "[t]he performance terms of the trade warranty established at trial were *identical* to those of the written warranty upon which appellant concedes it was prepared to defend * * *." (Emphasis supplied.) That warranty applied only to *installed* particleboard, and plaintiff's complaint alleged no other warranty.

[10] In oral argument before this court, counsel for plaintiff conceded that, if the trial court had incorrectly decided the pleading question, our order would properly be to reverse without remanding for a new trial.